UNITED STATES COURT OF INTERNATIONAL TRADE

Pipe & Piling Supplies Ltd.,

Plaintiff,

v.

UNITED STATES,

Defendant,

Court No. 26-03121

**COMPLAINT**

Plaintiff Pipe & Piling Supplies ("Plaintiff," "Pipe & Piling," or "PPMTL"), by and through its attorneys, alleges and states:

**ADMINISTRATIVE DETERMINATION CONTESTED**

1. This action is an appeal from the final determination issued by the United States Department of Commerce (the "Department" or "Commerce") in the administrative review of the antidumping duty order on Large Diameter Welded Pipe from Canada. The contested final results cover entries of subject large diameter welded pipe from Canada during the period of review ("POR") from May 1, 2023 through April 30, 2024.

2. Commerce published its contested final determination in the Federal Register on May 1, 2026. *See Large Diameter Welded Pipe From Canada: Final Results of Antidumping Duty Administrative Review; 2023 - 2024 (A-122-863),* 91 Fed. Reg. 23,394 (May 1, 2026) ("Final Results").

3. Commerce's final determinations, findings, and conclusions are set out in the issues and decision memorandum for the Final Results. *See Issues and Decision Memorandum*

*for the Final Results of the 2023-2024 Administrative Review of the Antidumping Duty Order on Large Diameter Welded Pipe from Canada (April 27, 2026) ("Final Decision Memo").*

## JURISDICTION

4. Plaintiff Pipe & Piling brings this action pursuant to Section 516A(a)(2) of the Tariff Act of 1930, as amended (the "Act"), 19 U.S.C. § 1516a(a)(2). Pipe & Piling contests the *Final Results* generally and specifically as applied to Pipe & Piling in connection with the review. This Court has jurisdiction under 28 U.S.C. § 1581(c).

## STANDING

5. Plaintiff Pipe & Piling is a foreign producer and/or exporter of subject merchandise and is therefore an interested party within the meaning of 19 U.S.C. §§ 1677(9)(A) and 1516a(f)(3), and 28 U.S.C. § 2631(k)(1). Pipe & Piling was also a party to the administrative proceeding from which this matter arises and thus has standing to bring this action under 28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

6. Commerce published notice of the contested *Final Results* on May 1, 2026. *See Final Results*, 91 Fed. Reg. 23,394.

7. Plaintiff filed a Notice of Intent to Commence Judicial Review with USMCA Secretariat on May 21, 2026, within 30 days of publication of the *Final Results.*

8. Plaintiff filed a Summons with this Court on June 23, 2026, within 30 days from the date of the submission of Plaintiff's Notice of Intent to Commence Judicial Review.

Plaintiff's Complaint is timely filed pursuant to 19 U.S.C. § 1516a(a)(2)(A) and Rule 3 of the Rules of this Court, which requires that the Complaint be filed within 30 days of the Summons.

**STANDARD OF REVIEW**

9. The Court must hold unlawful any administrative determination by Commerce that is "unsupported by substantial evidence on the record as a whole, or is otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B).

**STATEMENT OF FACTS**

10. Paragraphs 1 through 9 are realleged and incorporated herein.

11. On July 5, 2024, Commerce initiated the administrative review of the AD order on Large Diameter Welded Pipe (LDWP) from Canada. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 89 FR 55,567 (Dep't Commerce July 5, 2024). Commerce selected Evraz Inc. NA as the sole mandatory respondent. *See* Commerce's Letter: Respondent Selection (January 8, 2025). On April 8, 2025, Commerce selected Pipe & Piling as an additional mandatory respondent. *See* Commerce's Letter: Respondent Selection (April 8, 2025) Pipe & Piling, also known as "Pipe & Piling Montreal" ("PPMTL"), is a producer and seller of LDWP in the home market and an exporter of subject merchandise to the U.S. *See* Section A Questionnaire Response (May 1, 2025) (AQR), at 5-6.

12. On May 1, 2025, Pipe & Piling submitted its Section A questionnaire response, including a full discussion of its corporate organization and affiliates. Specifically, Pipe & Piling reported that it has four affiliated resellers located in Canada: (1) Pipe & Piling Supplies (Eastern) Ltd ("PP Eastern"), (2) Pipe & Piling Supplies (Central) Ltd. ("PP Central"). (3) Pipe

& Piling Supplies (Western) Ltd. (“PP Western”), and (4) Pipe & Piling Supplies (B.C.) Ltd. (“PP BC”). *See* AQR at 6-7. Pipe & Piling also has one affiliated company -- Pipe & Piling Supplies USA, Ltd. (“PP USA”) -- located in the U.S. who imports LDWP from PPMTL. *Id.* Pipe & Piling and these affiliated five resellers are owned by the same parent company. AQR at Exhibit A-2. Pipe & Piling is also affiliated with two LDWP producers, through family trust, in Canada -- 1045761 Ontario Ltd. (Operated as Canadian Phoenix Steel Products) (“Phoenix”), and Spiralco Inc. (“Spiralco”). The subject merchandise is all produced by Phoenix and Spiralco. *Id.* Finally, Pipe & Piling is affiliated with one toll processor, Precise Fabrication & Welding, LLC (“Precise Fabrication”), which is involved in toll processing of subject merchandise but does not sell subject merchandise. *Id.*

13. On May 27, 2025, Pipe & Piling submitted its initial Section C questionnaire response. *See* Section C Questionnaire Response (May 27, 2025) (CQR).

14. In its Section C response, Pipe & Piling reported the coating and freight revenues in the U.S. sales database. Freight expenses were allocated for subject merchandise by volume. *See* CQR at 33. Pipe & Piling engages a third party for coating services and bills the customer for costs incurred for coating. Pipe & Piling reported invoice-specific coating revenue. *Id.* at 27.

15. On May 30, 2025, Pipe & Piling submitted its initial Section B, D, and E questionnaire response. *See* Section B, D, and E Questionnaire Response (May 30, 2025) (BQR/DQR/EQR).

16. In its Section B response, Pipe & Piling reported all of PPMTL’s sales made during the POR. *See* BQR, at 2. In doing so, Pipe & Piling first reported PPMTL’s sales followed by its four affiliated resellers’ (*i.e.*, PP BC, PP Western, PP Central, PP Eastern) downstream sales in the home market sales database. *See* BQR, at B-1. Pipe & Piling then

reported PPMTL's adjustments and expenses. *Id*. Pipe & Piling also reported sales made by Phoenix and Spiralco. *Id.*

17. In each of the reconciliation worksheets in its Section B Questionnaire response, Pipe & Piling reconciled the reported sales to the financial statements of the respective company. *See* SBQR, at Exhibits B-25, B-26, B-27, and B-28.

18. Pipe and Piling explained in the response that its accounting systems (*i.e.,* SAGE and WebOE) are "not sophisticated enough to report any selling expense on a transaction specific-basis," and "Except for imputed expenses and freight, expenses and freight, P&P Supplies reported all selling expenses as ISE." *See* BQR, at 40, 41. Accordingly, Pipe & Piling reported yard expenses related to storage and logistics of materials incurred by PPMTL during the POR as indirect selling expenses. BQR at 41.

19. Pipe & Piling engaged third parties to provide coating services of subject merchandise. *See* BQR at 29. Pipe & Piling charges these services to customers. *Id*. Accordingly, Pipe & Piling separately reported the coating revenues in the initial sales database. *Id.*

20. In its Section D response, Pipe & Piling described its accounting systems including a software program called SAGE the company used as its general accounting record as well as a software program called WebOE the company used as a sales ledger. *See* Section D Questionnaire Response (May 30, 2025) (DQR), at 11, 13, 16, and 18.

21. On July 29, 2025, Commerce issued the first Section A supplemental questionnaire to Pipe & Piling, requesting, *inter alia*, additional information about Pipe & Piling's affiliates. *See* Supplemental Section A Questionnaire (July 29, 2025).

22. On August 8, 2025, Pipe & Piling submitted its response to the first Section A supplemental questionnaire. *See* Section A Supplemental Questionnaire Response (August 8, 2025).

23. On August 5, 2025, Commerce issued the first Section B supplemental questionnaire to Pipe & Piling, requesting, *inter alia*, additional information about Pipe & Piling's home market sales reconciliation. *See* Supplemental Section B Questionnaire (August 5, 2025).

24. On August 18, 2025, Pipe & Piling submitted its response to the first Section B supplemental questionnaire. *See* Section B Supplemental Questionnaire Response (August 15, 2025) (SBQR).

25. In its Section B supplemental response, Pipe & Piling included home market sales made by all seven affiliates (*i.e.*, PPMTL, Canadian Phoenix, Spiralco, PP BC, PP Western, PP Central, and PP Eastern). *See* SBQR. Pipe & Piling also reported all its affiliates' downstream sales to unaffiliated customers in separate home market sales databases. *See* SBQR, at Exhibit SB-1 and SB-2. Pipe & Piling clearly explained the reasoning underpinning all the changes made to its initial response. *See* SBQR.

26. Pipe & Piling was able to report coating revenue on a transaction-specific basis. *See* SBQR, at Exhibit SB-8. In response to Commerce's request to report "these revenues on a transaction-specific basis," Pipe & Piling reported unit revenue in the COATREVH in the revised HM sales database. *Id.* at 9.

27. On August 8, 2025, Commerce issued the first Section C supplemental questionnaire to Pipe & Piling, requesting, *inter alia*, additional information about Pipe &

Piling's U.S. market sales reconciliation. *See* Supplemental Section C Questionnaire (August 8, 2025).

28. On August 22, 2025, Pipe & Piling submitted its response to the first Section C supplemental questionnaire. *See* Section C Supplemental Questionnaire Response (August 22, 2025). In its Section C supplemental response, Pipe & Piling provided as updated reconciliation of its U.S. sales to PPMTL's financial statements. *See* SCQR, at Exhibit SC-40. In the worksheet, Pipe & Piling first reconciled PPMTL's financial statements to its financial accounting system (SAGE) and then to its sales ledger as recorded in its operational system WebOE. *Id*.

29. On August 15, 2025, Commerce issued the first Section E supplemental questionnaire to Pipe & Piling, requesting, *inter alia*, additional information about Pipe & Piling's further manufacturing cost database. *See* Supplemental Section E Questionnaire (August 15, 2025).

30. On August 12, 2025, Commerce issued the first Section D supplemental questionnaire to Pipe & Piling, requesting, *inter alia*, additional information about Pipe & Piling's reported costs by CONNUM. *See* Supplemental Section D Questionnaire (August 12, 2025).

31. Pipe & Piling described its general HM and US sales reconciliation methodology in its initial Section B response, for which PPMTL reconciled the reported sales with the company's financial statements. *See* BQR at 7. In the supplemental response, Pipe & Piling reconciled the sales value of each company's reported sales to the company's Financial Statements. *See* SBQR at 1. Pipe & Piling then reconciled the total value of sales in the sales report to the company's sales ledger extracted from the ERP system, WebOE. *See* SBQR, at

Exhibits SB-4. Pipe & Piling prepared reconciliation worksheets for all seven affiliates. *Id*. In the accompanying worksheets, Pipe & Piling used color codes and arrows to connect the sales data to the company's accounting systems to make the data as digestible as possible. *Id.* Where there were discrepancies, Pipe & Piling explained them via line items in the worksheets. *Id*.

32. Commerce did not ask any more questions of Pipe & Piling about its revised home market and U.S. sales reporting and sales reconciliations after Pipe & Piling submitted its Supplemental Questionnaire Responses outlined above, nor did Commerce request any additional information about Pipe & Piling's further processing or costs, notwithstanding that there were more than three months between the submission of the initial B-E Questionnaire Responses and when the preliminary results were due to issue.

33. On September 12, 2025, Commerce issued its *Preliminary Results* in this case, rejected all of Pipe & Piling's submitted information, and applied total "adverse facts available" ("AFA") to Pipe & Piling. *See Large Diameter Welded Pipe From Canada: Preliminary Results, Preliminary Determination of No Shipments and Rescission, in Part, of Antidumping Duty Administrative Review; 2023–2024;* 90 Fed. Reg. 44,165 (Dep't of Commerce September 12, 2025) ("*Preliminary Results*") and accompanying issues and decision memorandum dated September 5, 2025 ("*Preliminary Decision Memo*"). Commerce assigned Pipe & Piling a punitive dumping margin of 50.89 percent, which is the highest rate from the petition that gave rise to the AD order in this proceeding. *Preliminary Decision Memo,* at 11.

34. Commerce's *Preliminary Decision Memo* purported to justify its decision to use total AFA based on, *inter alia*, its findings that Pipe & Piling: "(1) failed to provide complete and supported sales reconciliations for its home market and U.S. sales to its financial statements; (2) failed to provide clear and consistent narrative explanations that tied to its reported home

market and U.S. sales; and (3) revised its reporting of certain adjustments without being directed to do so by Commerce." *Preliminary Decision Memo,* at 5.

35. On November 17, 2025, Pipe & Piling filed a case brief addressing each of the issues identified in the Preliminary Decision Memo. *See* Case Brief (November 17, 2025). Pipe & Piling emphasized that it did indeed submit complete and supported sales reconciliations, that the alleged narrative inconsistencies and minor database coding errors were clerical, and that certain data revisions were reasonable and made at Commerce's direction. *See* Case Brief at 1.

36. Pipe & Piling argued that there was no basis on which Commerce could or should apply total AFA and assign the highest rate from the petition to Pipe & Piling because the application of AFA is unsupported by substantial evidence on the record. *Id*.

37. On April 27, 2026, Commerce issued its final determination, rejecting Pipe & Piling's arguments and continuing to apply total adverse facts available. See *Final Decision Memo*, at 3-11. The final determination was published in the Federal Register on May 1, 2026. *See* 91 Fed. Reg. 23,394.

**STATEMENT OF CLAIMS**

38. Commerce's Final Results are unsupported by substantial evidence, arbitrary, unreasonable, and otherwise not in accordance with law as discussed below.

**COUNT I**
**(Unlawful Use of AFA)**

39. Plaintiff incorporates paragraphs 1 through 38 as fully set forth herein.

40. Commerce unlawfully and unreasonably refused to use Plaintiff's submitted data and instead applied total adverse facts available ("AFA") in the *Final Results*.

41. The Tariff Act of 1930 (the "Act"), permits Commerce to use "facts otherwise

available" in reaching determinations, but only if it meets certain threshold requirements specified in the statute. *See* 19 U.S.C. § 1677e(a). This includes, *inter alia*, a finding that: (1) "necessary information is not available on the record"; or (2) that an interested party "withholds information" that has been requested, "significantly impedes a proceeding", or otherwise provides information that "cannot be verified." *Id.* The statute also mandates that Commerce "shall not decline to consider information that is submitted by an interested party and is necessary to the determination" if the information is submitted by the deadlines, can be verified, is not incomplete, and can be used without difficulties. 19 U.S.C. § 1677m(e).

42. Commerce purports to find that "Pipe & Piling withheld information Commerce requested, failed to provide such information by the deadlines for submission of the information or in the form and manner requested, and significantly impeded this proceeding." *See Final Decision Memo* at 5. But Commerce's findings on this point are unsupported by substantial evidence and otherwise unlawful. Plaintiff did not withhold any information, impede the proceeding, or fail to provide necessary information. Plaintiff at all times provided all information requested and Commerce had all information on the record necessary to calculate Plaintiff's dumping margin. Indeed, Plaintiff (1) submitted detailed, comprehensive and step-by-step sales reconciliations covering six affiliated companies, using multiple accounting systems, trial balances, and audited financial statements (2) made minor clerical, insignificant, and correctable narrative inconsistencies and minor database coding errors, and (3) made certain adjustments that were reasonable and made at Commerce's discretion. Altogether, Pipe & Piling provided more than 4,000 pages of documents and narratives, or more than 170 worksheets and exhibits. But Commerce nevertheless unreasonably and unlawfully refused to consider this information.

43. Commerce's decision to use total adverse facts available thus was arbitrary,

unreasonable, unsupported by substantial evidence, and otherwise contrary to law.

**COUNT II**
**(Alleged Failure to Provide Clear and Consistent Narrative Explanations)**

44. Paragraphs 1 through 42 are realleged and incorporated herein.

45. Commerce unlawfully determined that Pipe & Piling failed to provide clear and consistent narrative explanations that tied to its reported home and U.S. sales. *See Final Decision Memo,* at 6-7. In this regard, Commerce determined that Pipe & Piling did not explain provide a narrative explanation of its sales reconciliation and that a narrative explanation cannot be replaced with "arrows, matching colors, and formulae." *Id.*

46. Commerce's findings are contrary to the record and otherwise unlawful. Pipe & Piling responded to all questions to the best of its ability. Pipe & Piling did indeed provide a narrative description of its sales reconciliations. *See* SBQR at 1-3. These step-by-step explanations clearly link to the provided reconciliation worksheets. *See* BQR at Exhibits B-25, B-26, B-27. *See* SBQR at Exhibits SB-4, SB-5, and SB-6.

47. Commerce never requested additional clarification about the home market sales reconciliations provided by Pipe & Piling after receiving the revised Section B questionnaire response and worksheets, nor did it inform Pipe & Piling that the responses were deficient despite the fact that the agency had months of time in which to do so prior to the deadline for the issuance of its preliminary determination.

48. Thus, Commerce's determination regarding Pipe & Piling's alleged failure to provide clear and consistent narrative explanations of its sales reconciliation and its application of AFA in this context were arbitrary, unreasonable, unsupported by substantial evidence, and otherwise contrary to law.

**COUNT III**

**(Unlawful AFA Findings based on Deficiencies in Reported Fields)**

49. Paragraphs 1 through 47 are realleged and incorporated herein.

50. Commerce unlawfully determined that Pipe & Piling made significant errors and prevented Commerce from meaningfully relying on Pipe & Piling's submitted information to calculate an accurate dumping margin. These deficiencies are "(1) its reported product codes did not correspond to its reporting of prime merchandise; (2) its reported coating revenue for sales that it did not report were coated as part of the product characteristics; and (3) it failed to provide a sufficient narrative description of how it reported date of sale." *See Final Decision Memo* at 8.

51. Commerce's findings are contrary to the record and otherwise unlawful. With respect to prime merchandise discrepancies, only less than 1% of the transactions were miscoded. Similarly, the reported coating revenue errors also account for a small fraction of the total reported transactions. *See Case Brief* at 21. Lastly, Pipe & Piling did indeed confirm in its narratives that the date of sale corresponds with the invoice dates. *See* CQR at 22; SCQR at 13. All three of these errors are immaterial, easily correctable, and do not impede on Commerce's calculation of a dumping margin.

52. Commerce never explained to Pipe & Piling why these technical errors are of significance.

53. Thus, Commerce's findings about Pipe & Piling's deficiencies in reported fields and the agency's rejection of Pipe & Piling's data and use of AFA were arbitrary, unreasonable, unsupported by substantial evidence, and otherwise contrary to law.

**COUNT IV**

**(Unlawful AFA Findings based on Revised Adjustments)**

54. Paragraphs 1 through 52 are realleged and incorporated herein.

55. Commerce unlawfully determined that Pipe & Piling made "unwarranted revisions to freight expenses, freight revenue, indirect selling expenses, and yard expenses." *See Final Decision Memo* at 10. In this regard, Commerce found that Pipe & Piling, in response to Commerce's request for (1) an explanation of the freight and revenue amounts reflect the POR period and (2) demonstration of how each reconciles to the respective company's financial statements, added five months of unrequested expenses. *See Preliminary Decision Memo* at 8. Additionally, Commerce found that Pipe & Piling, in response to Commerce's request for a narrative description for yard expenses, removed yard expenses from its U.S. sales database and added these expenses to its indirect selling expense calculation. *Id* at 8.

56. Commerce's findings are contrary to the record and otherwise unlawful. In the supplemental questionnaire, Commerce requested that Pipe & Piling revise its Section C response to either "remove this field or justify the inclusion of these warehousing expenses…" in reference to yard expenses. *See* Section C Questionnaire at 8. Pipe & Piling then removed yard expenses from its U.S. sales database and added these expenses to its indirect selling expense calculation. *SCQR* at Exhibit SC-1. Contrary to Commerce's determination, Pipe & Piling did not make any unsolicited changes.

57. Commerce never informed Pipe & Piling that the revised Section B questionnaire response, worksheets and databases contain unsolicited information.

58. Thus, Commerce's findings about Pipe & Piling's revised adjustments and the agency's rejection of Pipe & Piling's data and use of AFA were arbitrary, unreasonable, unsupported by substantial evidence, and otherwise contrary to law.

**Count V**
**(Unlawful Failure to Provide Notice)**

59. Plaintiff incorporates and realleges paragraphs 1 through 57 as fully set forth herein.

60. Commerce must also comply with the notice and remedial requirements of 19 U.S.C. § 1677m(d). Thus, if Commerce determines that a response does not comply with the request for information, Commerce "shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency." 19 U.S.C. § 1677m(d).

61. Commerce failed to comply with these notice and remedial provisions. Pipe & Piling timely provided all information requested regarding its sales and further processing information, etc.. Commerce had this information for several months before the preliminary results, but it never adequately notified Plaintiff of any potential deficiencies after Pipe & Piling provided its first revised Section B, C and D supplemental response.

62. Thus, Commerce's use of AFA in the *Final Results* was arbitrary, unreasonable, unsupported by substantial evidence, and otherwise contrary to law.

**COUNT VI**
**(Commerce Failed to Corroborate the AFA Rate)**

63. Paragraphs 1 through 61 are realleged and incorporated herein.

64. Commerce's failure to assign the cash deposit rate in effect at the time of entry (*i.e.,* 7.90 percent) to Pipe & Piling's POR entries in the *Final Results* is unlawful.

65. In the *Final Results*, Commerce continued to apply AFA. These results were unchanged from the *Preliminary Results,* where Commerce assigned Pipe & Piling the petition rate of 50.89 percent, which is secondary information. *See Preliminary Decision Memo*, at 11.

66. When relying on secondary information rather than on information obtained during the review, the statute instructs that Commerce "shall, to the extent practicable, corroborate that information from independent source." *See* 19 U.S.C. § 1677e(c)(1). Commerce's regulation provides that independent sources may include published price lists, official import statistics and customs data, and information obtained from interested parties during the instant review. *See* 19 C.F.R. § 351.308(d).

67. Commerce acknowledges that "there is no information on the record of this review to corroborate the highest dumping margin alleged in the petition." *See Prelim Decision Memo*, at 11.

68. A rate based on the highest rate from the investigation of the AD order cannot be used to corroborate the AFA rate assigned to Pipe & Piling, because it is not an "independent source" of information in the instant review.

69. Thus, Commerce failed to provide independent sources of probative information to corroborate Pipe & Piling's AFA rate, and Commerce's refusal to apply the cash deposit rate in effect at the time of entry to Pipe & Piling's POR entries is arbitrary and unlawful.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff, declare that Commerce erred in the Final Results in the subject review alleged herein, and remand to Commerce with instructions to revise its final results in conformity with the

opinion of this Court. Specifically, the Plaintiff prays that this Court remand Commerce to determine that the application of adverse facts available to Pipe & Piling is unwarranted. Plaintiff otherwise requests that the Court grant such additional relief as the Court may deem just and proper.

Respectfully submitted,

*/s/ Alexander H. Schaefer*
Alexander H. Schaefer, Esq.
Weronika Bukowski, Esq.

Crowell & Moring LLP
600 Fifth Street, N.W.
Washington, D.C. 20001

*Counsel for Pipe & Piling Supplies Ltd.*

July 14, 2026

## CERTIFICATE OF SERVICE

I certify that on July 14, 2026, I electronically filed the foregoing Complaint with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

/s/ Alexander H. Schaefer
Alexander Schaefer
**CROWELL & MORING LLP**
600 Fifth Street, N.W.
Washington, D.C. 20001
(202) 624-2773
aschaefer@crowell.com

*Counsel for Pipe & Piling Supplies Ltd.*

Dated: July 14, 2026

## CERTIFICATE OF SERVICE

Pursuant to Rule 3(f) of the Court of International Trade, I, Alexander H. Schaefer, hereby certify that I have caused copies of the Complaint, in Pipe & Piling Supplies v. United States, Case No. 26-03121, be served upon the parties in the administrative proceeding, by the U.S. certified mail, return receipt.

Timothy C Brightbill, Esq.
Representative of The American Line Pipe Producers Association Trade Committee
**Wiley Rein LLP**
2050 M Street, NW
Washington, DC 20036
Phone: 202-719-7000
Email: tbrightbill@wiley.law

Nancy A Noonan, Esq.
Representative of Canam Group Inc.
**ArentFox Schiff LLP**
1717 K St., NW
Washington, DC 20006
Phone: 2028576000
Email: nancy.noonan@afslaw.com

Craig A. Lewis, Esq.
Representative of Evraz Inc. NA Canada, Evraz Inc. NA
**Hogan Lovells US LLP**
555 Thirteenth Street, NW
Washington, DC 20004
Phone: 202-637-5600
Email: craig.lewis@hoganlovells.com

/s/ Alexander H. Schaefer
Alexander Schaefer
**CROWELL & MORING LLP**
600 Fifth Street, N.W.
Washington, D.C. 20001
(202) 624-2773
aschaefer@crowell.com

*Counsel for Pipe & Piling Supplies Ltd.*